## THE UNITED STATES *a*. VIETOR.

*Supreme Court, First District ; At Chambers, May,* 1863.

INTERPLEADER.—RIGHT OF WRONGDOER OR VOLUNTEER.—STATE UNDER INSURRECTIONARY CONTROL.

A mere volunteer, who by his own wrong has interfered against one claimant for the benefit of another, is not entitled to an interpleader to determine between the right of such claimant and his own principal.

Thus, a person sued for detaining property which he has taken under his control for the protection of the right of a supposed owner, cannot maintain an action to require the person from whom he took the property, and such supposed owner, to interplead respecting it.

Although a State of the Union has adopted an ordinance of secession, and is under insurrectionary control, it is still entitled to bring suit in our courts.

Motion to vacate an injunction.

This was an action of interpleader brought by the United States and John J. Cisco against Theodore Vietor and George F. Duckwitz, and the State of Texas. The injunction restrained Vietor and Duckwitz from proceeding in an action which they

had brought in this court in the second district against Cisco, for damages for seizing and withholding certain negotiable bonds of the United States, known as Texas Indemnity Bonds. The complaint in the present action alleged that the bonds in question were a part of the school-fund bonds of Texas; that no authority existed to dispose of them; that they were without authority and feloniously taken from the treasury of the State of Texas; and disposed of for some illegal or inadequate consideration, and that the parties obtaining them had notice of their ownership.

It appeared on the present motion that Cisco, who was an assistant treasurer of the United States, received the bonds from Vietor & Co. for inspection, and declined to return them.  On the present motion Vietor & Co. asserted title to the bonds as *bona-fide* holders, succeeding to the right of one Leopold Dans of Matamoras.

The motion to vacate the injunction was now made by Vietor and Duckwitz.

The State of Texas had adopted an ordinance of secession, and was at the time of this motion under insurrectionary control, and not represented before the court.

*Benjamin D. Silliman*, for the motion.—I. Vietor & Duckwitz (through Dans of Mexico) are holders of negotiable paper, taken in the usual course of business, before its maturity, for a valuable consideration.  1. The plaintiffs do not charge knowledge by Vietor & Duckwitz, or Dans, that the bonds had been stolen.  2. Such transfer before maturity carries no suspicion on the face of it, and the holder is not bound to inquire into any circumstances existing between the assignor and any of the previous parties.  (In Nelson *a.* Cowing, 6 *Hill*, 339; Brown *a.* Davies, 3 *T. R.*, 80; O'Keefe *a.* Dunn, 6 *Taunt.*, 305.)  Hence, should the paper be in fact affected with fraud in its inception, but transferred in the usual course of business, &c., without notice of the fraud, it cannot be impeached by the maker. (Bay *a.* Coddington, 5 *Johns. Ch.*, 54; S. C., 20 *Johns.*, 637; Story *a.* American Life Ins. Co., 11 *Paige*, 635; Stalker *a.* McDonald, 6 *Hill*, 93; *Willard's Eq. Jur.*, 359.)

II. But independently of this rule as to negotiable paper, Cisco, instead of being an innocent stakeholder, has seen fit to

court the dilemma which he asserts to exist; and has assumed the right to take and withhold the bonds from us. 1. Suppose the bonds had been stolen from Texas. By what right should he interfere in the matter? He was not the officer of Texas. He was not owner of the bonds, nor entitled to their custody. He was a trespasser in any view of the case. 2. What had the United States to do with it? We had not called on the United States to pay them. The debtor on a bill, of all men in the world, is (until it is paid) not the one to claim its possession. Possession would imply its payment.

III. The interpleader in this case cannot be maintained, and, if not, the injunction must fall. 1. If there had been any basis for an interpleading, Mr. Cisco should have brought in the United States and Texas (under section 122 of the Code) as defendants in the suit brought by Vietor & Co. against him. An interpleader is not proper where a suit already exists,. in which the other parties may be brought in under that section. (Chamberlain a. O'Conor, 1 E. D. Smith, 665 ; S. C., 8 How. Pr., 45 ; Beck a. Stephani, 9 Ib., 197.) The very object of injunction in interpleaders is to prevent multiplicity of suits. ( Willard's Eq. Jur., 344.) 2. Section 245 of the Code, subd. 5, would also furnish a remedy without another suit. 3. The courts as a general rule will not, by injunction, stay suits in the same court.

IV. 1. Bills of interpleader ought not to be encouraged, and they should never be brought except in cases where the plaintiff can in no other way be protected from an unjust litigation in which he has no interest. (Bedell a. Hoffman, 2 Paige, 199 ; Willard's Eq. Jur., 323.) 2. Full relief can be had at common law in the court where our suit is brought.

V. The office of the bill, and what are essential to it, are well settled. ( Willard's Eq. Jur., 313.) It can only be where claims are made against the plaintiffs. by both the defendants. (Bedell a. Hoffman, 2 Paige, 200 ; Atkinson a. Manly, 1 Cow.,. 703.) It must be when the plaintiff has incurred no independent liability to either defendant. (Adam's Eq., 202.) 1. The plaintiffs must seek to be protected against claims made against them by both defendants. The bill does not pretend that any claim has been made against either of the plaintiffs. 2. The

plaintiffs must seek to be protected against suits by the defendants. No claimant can bring suit against the United States. 3. The plaintiff should show himself to be indifferent to the claims of either party (Mariner a. Ellwood, 11 *Paige*, 374; Oppenheim a. Wolf, 3 *Sandf. Ch.*, 571; Newton a. Moody, 7 *Dow.*, 582), and that he claims no beneficial interest in the subject of the controversy (Atkinson a. Manly, 1 *Cow.*, 703; Anderson a. Wilkinson, 10 *S. & M.*, 601; Moore a. Usher, 7 *Sim.*, 384; Mitchell a. Hayne, 2 *Sim. & Stu.*, 63), and must admit a title as against himself in all the defendants. (Green a. Green, 1 *Ire. Eq.*, 229; Anderson a. Wilkinson, 10 *S. & M.*, 601.) Now plaintiffs do not show indifference to the claims of either party. Cisco states that he claimed and took the bonds as the property of Texas. 4. He must not be a wrongdoer, or in default as to either defendant. (Shaw a. Coster, 8 *Paige*, 339; Green a. Green, 1 *Ire. Eq.*, 229; McGow a. Adams, 14 *How. Pr.*, 461.) The facts shown place him in that position. 5. He must not by his own act have placed himself in the position to be sued. (9 *Bing.*, 82; Crawshow a. Thurston, 7 *Sim.*, 391; 2 *Myl. & Cr.*, 1; Pearson a. Carden, 4 *Sim.*, 218; 2 *Rus. & M.*, 606; Paterm a. Campbell, 3 *Dow. N. S.*, 397.) Cisco has placed himself in a position to be sued. 6. He must be ignorant of the rights of the adverse claimants. (Bell a. Hunt, 3 *Barb. Ch.*, 391.) He here avers the ownership of the bonds by Texas; has claimed and taken them as the property of Texas.

VI. 1. An injunction will not be granted on information and belief. (Campbell a. Morgan, 7 *Paige*, 160; Bank of Orleans a. Skinner, 9 *Ib.*, 305.) 2. Injunction should be granted only where the rights sought to be protected are clear, or at least free from reasonable doubt. (Snowden a. Noah, *Hopk.*, 347.) 3. Where the equity of the bill is denied by the defendant, the injunction falls of course. (Falconer a. Ellis, 3 *Sandf. Ch.*, 731; Perkins a. Warren, 6 *How. Pr.*, 341.) Here the denial of the equity is explicit.

VII. The suit enjoined is not for the recovery of the bonds, but for damages. This interpleader suit cannot decide our right to damages against Cisco. (Patterson a. Perry, 6 *Duer*, 686; S. C., 14 *How. Pr.*, 505; City Bank a. Bangs, 2 *Paige*, 570; Bender a. Sherwood, 15 *How. Pr.*, 259.)

VIII. 1. On what principle do the United States and Cisco

join in this bill? On what ground, then, can the United States enjoin us from proceeding in a suit for damages against Cisco? 2. Interpleader is only for safety of the person filing the bill. (*Story's Eq. Pl.*, § 18.) What is the peril of the United States?

IX. If either Cisco or the United States is agent of Texas, it cannot claim interpleader. It must deliver the bills to Texas. (*Story's Eq. Jur.*, § 296.)

*Augustus F. Smith*, opposed.—I. Vietor & Co., after abundant opportunity to communicate with their principal, fail to make a case that entitles them to the position of *bona-fide* holders of the bonds.

II. As the bonds were feloniously misappropriated, it was the duty of the United States to stop them wherever found. 1. The bonds are transferable by delivery, and are negotiable. (13 *N. Y.*, 624–5 ; Delafield *a.* State of Illinois, 26 *Wend.*, 220.) 2. The government cannot be considered a wrongdoer where they attempt to protect interests so sacred. (See *Constitution*, art. 4, § 4.)

III. The only cases found, which contain even a dictum, to the effect that a wrongdoer cannot file a bill of interpleader, are cases where the sheriff has sought to interplead the plaintiff in an execution, and the claimant of the property. 1. It is the general policy of the law that the sheriff shall act at his peril. 2. Moreover, the law has provided for the sheriff a sort of interpleader by statute. (Slingsby *a.* Boulton, 1 *Ves. & B.*, 334. See Cooper *a.* Sheriff of London, 1 *Burr.*, 37 ; 2 *Rev. Stat.*, 4, 525 ; *Burr. Pr.*, 297.)

IV. The affidavits show that the bonds were voluntarily left with Cisco ; this disposes of any pretence of wrongdoing.

V. At law, nothing can be tried but the mere question of right of possession. None of the questions presented here can be discussed there. (Duncan *a.* Spear, 11 *Wend.*, 54.)

VI. This is a proper case for an interpleader. The People of the State of Texas have very sacred rights, and the principal of Vietor & Co. may possibly have advanced something on the bonds, in good faith, which they ought to receive. 1. It has been shown that the United States are not to be deemed wrongdoers, so as to deprive them of a right to be heard in a

court of equity. 2. The Code gives the absolute right to interplead. (*Code*, § 122.)

VII. The following are some of the authorities that bear upon the question of the right to interplead : Richards *a*. Salter (6 *Johns. Ch.*, 445); Balchin *a*. Crawford (1 *Sandf.*, 380); Bedell *a*. Hoffman (2 *Paige*, 199); Aymar *a*. Gault (*Ib.*, 284). As to bills in the nature of bills of interpleader, see 2 *Story's Eq. Jur.*, § 824.

VIII. In the action at law the plaintiffs claim to recover the bonds themselves and damages, and they in fact claim these damages to the whole value of the bonds, upon the allegation that the bonds have fallen in the market upon its ·becoming known that they were fraudulently obtained. The government are in danger of having the bonds taken from them, and paying their face besides.

LEONARD, J.—The plaintiffs received the bonds from Vietor & Duckwitz for inspection.

They became wrongdoers by retaining them when demanded by that firm.

It is alleged by the complaint that the plaintiffs believe the State of Texas claims the bonds.

No authorized claimant on the part of that State has appeared in this action, or made any actual claim to the bonds.

The plaintiffs are not under any obligation to Texas to retain the bonds, nor are they liable to that State for any thing, if they return them to the firm from whom they were received.

The plaintiffs cannot become volunteers for the protection of supposed rights on the part of Texas, which that State does not think proper to claim or enforce.

The courts are open to Texas to take proceedings on her own behalf to obtain the bonds, if they have any claim to them, and it is wholly gratuitous for the plaintiffs to volunteer to protect supposed rights of that State as against the defendants.

It will be observed that the United States make no claim to the bonds on their own behalf; nor is it supposed that the United States have any claim, except such as may arise from the rebellious attitude assumed by the State of Texas. No attempt is made to claim the bonds on any such ground, although

some reference is made to the anomalous condition of Texas arising from the rebellion.

There is nothing to give this court any jurisdiction on any such ground.

The injunction must be dissolved, with $10 costs of the motion.